UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| CHRISTOPHER BROWN, | ) | CASE NO. 3:25-CV-1202 (KAD) |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ANGEL QUIROS, *et al.*, | ) | JANUARY 29, 2026 |
| *Defendant*. | ) | |

**<u>INITIAL REVIEW ORDER PURSUANT TO 28 U.S.C. § 1915A</u>**

Kari A. Dooley, United States District Judge:

Plaintiff Christopher Brown, a sentenced inmate at MacDougall-Walker Correctional Institution ("MacDougall") in the custody of the Connecticut Department of Correction ("DOC"), filed this Complaint *pro se* under 42 U.S.C. § 1983 naming the following DOC officials: Commissioner Angel Quiros, Deputy Commissioner William Mulligan, District Administrator Nick Rodriguez, former District Administrator Eulalia Garcia, former Head of Offender Classification and Population Management ("OCPM") Karl Lewis, former Head of OCPM David Maiga, current Head of OCPM David Snyder, former Warden Hannah, and Wardens Dougherty and Guadarrama. *See* Compl., ECF No. 1. at ¶¶ 5-14. He alleges violations of his Constitutional rights arising out of his continued placement on restrictive High Security status. *Id*. at ¶ 1. He seeks damages, declaratory relief, and a preliminary and permanent injunction requiring Defendants Quiros, Mulligan, Snyder, Rodriguez, and Garcia to release him from restrictive status and to rewrite the DOC administrative directive on restrictive status. *Id*. at ¶¶ 159-166.

**Allegations**

The Court has considered all the allegations set forth in the Complaint, as well as the exhibits attached thereto, and recites herein only those facts that are pertinent to its initial review.

DOC Administrative Directive 9.4 governs classifications to High Security, which is a designation providing for "increased supervision of inmates who pose a threat to the safety and security of the facility, staff, inmates, or the public."[1]  A.D. 9.4(3)(j).  Plaintiff is currently housed at MacDougall, and he claims he has been on High Security status for the past twenty years because he ran from the Judicial Marshals during a court appearance in 2005.[2]  Compl. at ¶¶ 4, 15, 50, 92.  Although Plaintiff includes more dated allegations regarding his High Security designation, only those allegations which post-date November 2019 are pertinent to the Court's initial review.

Cheshire Correctional Institution

On November 27, 2019, while housed at Cheshire Correctional Institution ("Cheshire"), Plaintiff had a High Security review.  *Id.* at ¶ 116.  At the time, Defendant Maiga was the Head of OCPM and was in charge of managing High Security periodic reviews for prisoners on special status.  *Id*. at ¶¶ 9, 95-96.  Deputy Warden Peterson, who is not named as a Defendant, recommended to Defendant Maiga that Plaintiff be removed from High Security status, noting that Plaintiff "no longer posed a threat to the safety and security of the facility . . . and had an extended period of good institutional adjustment."  *Id*. at ¶¶ 116-17. Defendant Maiga rejected the recommendation with "no meaningful consideration [and] because of his bias toward [Plaintiff]." *Id*. at ¶ 118.

Garner Correctional Institution

In November 2020, Plaintiff was housed at Garner Correctional Institution ("Garner"). Defendants Maiga and Warden Hannah failed to conduct Plaintiff's High Security periodic review

---

[1]  *See* DOC Administrative Directive 9.4, https://portal.ct.gov/doc/ad/ad-chapter-9 (last visited Jan. 2, 2026). The Court may take judicial notice of matters of public record.  *See, e.g.*, *Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006); *Kelley v. Quiros*, No. 22-CV-1425 (KAD), 2023 WL 1818545, at *2 (D. Conn. Feb. 8, 2023).

[2]  Prior to being on High Security status, Plaintiff spent ten months in Administrative Segregation (solitary confinement) at Northern Correctional Institution.  Compl. at ¶¶ 16-22.

in November of 2020, and Defendant Maiga, "as the one in charge of this decision making[,] . . . failed to conduct the [review] when he knew it was time for [Plaintiff's] review." *Id.* at ¶¶ 93, 95, 97. On February 23, 2021, Plaintiff filed a grievance with Defendant Hannah advising her that his November 2020 review had not been conducted. *Id*. at ¶ 94. Defendant Hannah denied the grievance on March 1, 2021, the same day "she made her subordinates give" Plaintiff his High Security review. *Id*. at ¶¶ 93-95.

On March 5, 2021, Plaintiff appealed the denial of his February 23, 2021 Grievance to Defendant Rodriguez and asserted that his March 1, 2021 review should have been completed in November of 2020. *See id*. at ¶¶ 98-99. At that time, Defendant Rodriguez was the "level (2) responder" and District Administrator, whose "duty [it was] to answer and resolve any appealable violations and wrongs."[3] *Id*. at ¶ 98. Defendant Rodriguez rejected Plaintiff's Grievance, stating that the Level 1 Grievance he filed on February 23, 2021 was improperly filed because it was filed "beyond 30 calendar days of discovery." *Id*. Defendants knew Plaintiff was entitled to periodic reviews every six months, and that Defendant Rodriguez knew Defendants Maiga and Hannah had failed to conduct his review but chose to ignore the matter. *Id*. at ¶¶ 102-03.

<u>Transfer Back to Cheshire</u>

On June 25, 2021, Plaintiff was transferred back to Cheshire. On September 1, 2021, Plaintiff had a High Security review with a new warden, classification staff, and unit manager. *Id.* at ¶ 120. It was recommended that Plaintiff be removed from High Security, in part because he was not an escape risk. *Id*. at ¶¶ 120-21. Defendant Maiga rejected the recommendation to remove

---

[3] Defendant Rodriguez is the current District Administrator for the DOC. *See* https://portal.ct.gov/doc/org/operations-north-district-administrator (last visited Jan. 7, 2026). However, based on Plaintiff's allegations, it appears that Defendant Rodriguez was not the District Administrator between May of 2023 and December of 2024.

Plaintiff from High Security, even though there was no penological justification provided for this rejection. *Id*. at ¶¶ 122-23.

On April 12, 2022, Plaintiff had another High Security review by the same classification and personnel staff, and it was again recommended that Plaintiff be removed from High Security. *Id*. at ¶¶ 124-25. At this time, Defendant Snyder was the Director of OCPM. *Id*. at ¶ 125. Defendant Snyder rejected the removal recommendation with "no meaningful consideration" or "penological justification." *Id*. at ¶¶ 125-26.

On October 26, 2022, Plaintiff had another High Security review with the same classification staff, but a different unit manager. *Id*. at ¶ 128. It was recommended that Plaintiff be removed from High Security status because he "posed no security threat" and did "not fit any of the factors for continued placement." *Id*. at ¶¶ 128-29. Defendant Snyder denied the request with no reason or justification. *Id*. at ¶¶ 129-30. On December 19, 2022, Plaintiff appealed this rejection, and Deputy Commissioner Mulligan denied the appeal. *Id*. at ¶ 138. Defendant Mulligan "has the authority to redress all these issues, and one of his many purposes is to remedy exactly this[,] [but] he denied [Plaintiff] based on no specific reasoning in keeping [him] on this status." *Id*.[4]

On April 26, 2023, and October 26, 2023, Plaintiff had High Security reviews, and it was recommended that Plaintiff be removed from High Security status because he was not an escape risk. *Id*. at ¶¶ 131-33. Defendant Snyder rejected the recommendations "for no apparent reasoning" and "for no reasons related to [his] initial placement." *Id*. at ¶¶ 132-33. On May 17, 2023, Plaintiff appealed Defendant Snyder's rejection that ensued from the April 26, 2023 review, but the current District Administrator, Defendant Garcia, denied the appeal based on Plaintiff's

---

[4] On March 15, 2023, Plaintiff wrote to Captain Calo, who confirmed that the recommendations for removal from High Security status are forwarded to OCPM for their staff to make the final decision. *See* Compl. at ¶ 148.

disciplinary history. *Id*. at ¶ 139. Plaintiff was placed on High Security status for his 2005 escape attempt, not his disciplinary history, and therefore, he should not have remained on High Security status for disciplinary reasons. *Id*. at ¶¶ 139-143.

Corrigan Correctional Center

On July 22, 2024, Plaintiff, who was then housed at Corrigan Correctional Center ("Corrigan"), filed a grievance because he had been denied his periodic review for almost one year by Defendant Warden Dougherty and Defendant Snyder, the current Head of OCPM responsible for the review of all prisoners on special statuses. *Id*. at ¶¶ 10, 13, 104. The grievance was "upheld in part" by Defendant Dougherty, who stated "Your High Security Review was completed on 09/18/2024. As a result, it was recommended that you be continued on this status." *See id*. at ¶ 105; Grievance, ECF No. 1 at 61. By upholding the grievance, Defendant Dougherty was admitting that he and Defendant Snyder failed to conduct his periodic review for eleven months. Compl. at ¶ 105. These Defendants rejected the recommendation for removal from High Security status in order to punish Plaintiff insofar as he was in a minimum-security unit at Corrigan. *Id*. at ¶ 106. These Defendants denied his removal with "no penological justification." *Id*. at ¶¶ 106-07. Plaintiff's housing at Corrigan in a minimum level security unit is evidence that he was not an escape risk.[5] *See id*. at ¶ 150.

On October 10, 2024, Plaintiff filed a Level 2 Grievance pertaining to the eleven-month delay of his periodic review and the rejection of the recommendation that he be removed from

---

[5] On September 7, 2024, Plaintiff wrote to his counselor to determine what was needed for him stay at Corrigan, which was a level (2) minimum security unit. Compl. at ¶ 152. His counselor told him that he must be a level 2 prisoner and that Lt. Pearson, not named as a Defendant in this action, would have to sign off on it, which Plaintiff claims Lt. Pearson had done since Plaintiff was housed there for over three months. *Id*. On September 16, 2024, Plaintiff wrote to his counselor to make sure he had a record of being housed in a minimum level security unit at Corrigan. *Id*. at ¶ 149. Although not clear, it appears that Plaintiff remained on High Security status but was nonetheless housed in a minimum-security unit at Corrigan.

High Security status. *Id*. at ¶¶ 108-09. On December 23, 2024, Defendant Guadarrama,[6] the acting District Administrator at the time, denied the appeal and stated that a grievance was not the proper avenue for Plaintiff to appeal his classification status. *Id*. at ¶¶ 109-113. Defendant Guadarrama "failed to give any meaningful consideration or remedy [the] grievance and its issues when he was the sole individual who could have done so." *Id*. at ¶ 113.

MacDougall

On February 27, 2025, Plaintiff, who was then housed at MacDougall, appealed another rejection of a recommendation that he be removed from High Security status to Defendant Deputy Commissioner Mulligan. *Id.* at ¶ 144. Defendant Mulligan was "one of the only decisions makers that [could] release [him] from this status," but he denied the appeal on the grounds that it was not subject to review. *Id*. at ¶¶ 144-45. Defendants Quiros, Mulligan, Garcia, Rodriguez, and Snyder are the "final decision makers [who] kept cycling [Plaintiff] around by answering an appeal, then responding on some that [Plaintiff could not] appeal an initial decision[,] back to answering the appeal with denials." *Id*. at ¶ 157.

High Security Status

Inmates on High Security status are "subjected to harsher treatment by the guards and all personnel" and "to massive shakedowns daily," as well as the requirement that these inmates move every sixty days, which is a strain on Plaintiff's "medically impaired body." *See id.* at ¶¶ 23-24. At some facilities, Plaintiff was not able to go outside "to the big rec yard where he is able to touch and feel grass," and at one point, he was surrounded by "concrete and me[t]al for years," and he now suffers from "multiple mental disorders." *Id*. at ¶¶ 25-26. Plaintiff is constantly harassed because of his high-risk status; he is prevented from ever having his "restraints relaxed or

---

[6] Defendant Guadarrama is the current Warden at MacDougall.

released"; he is prevented from "ever receiving an outside job or outside the unit job"; and cannot be considered for parole eligibility or have contact visits with his family. *Id*. at ¶¶ 27-31. Being on High Security means Plaintiff must "stay in a maximum-security unit with younger, more aggressive[,] and dangerous prisoners." *Id*. at ¶ 31.

Plaintiff has completed 21 years of his 30-year sentence, and he claims that he is only on High Security status because he ran from the Marshals over twenty years ago. *Id*. at ¶ 59. He had brain surgery in 2023, which left him partially paralyzed, and reconstructive neck and spinal surgery in 2024, which likewise left him with major impairments. *Id*. at ¶¶ 59, 63. He does not pose any threat to the safety and security of the facility, staff, or others, namely, because his "physical condition has deteriorated in such a manner" that he is a non-threat. *Id*. at ¶¶ 60-62. He was not placed on High Security status initially for his disciplinary history, so he should not continue to be High Security status for disciplinary reasons. *Id*. at ¶¶ 141-43.

Plaintiff is suing all Defendants in their individual capacities, and only Defendants Quiros, Mulligan, and Snyder in their official capacities. *Id*. at ¶¶ 5-14. He seeks injunctive relief against Defendants Quiros, Mulligan, Snyder, and Rodriguez, *id*. at ¶¶ 5-6, 10, 161, and compensatory and punitive damages against all Defendants, *id*. at ¶¶ 162-63.

**Standard of Review**

The Court must review prisoner civil complaints and dismiss any portion of the complaint that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(a)–(b). In reviewing a *pro se* complaint, the Court must assume the truth of the allegations and interpret them liberally to "raise the strongest arguments [they] suggest[ ]." *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007); *see also Tracy v. Freshwater*, 623 F.3d 90, 101-02 (2d Cir. 2010)

(discussing special rules of solicitude for *pro se* litigants).  Although detailed allegations are not required, the complaint must include sufficient facts to afford the defendants fair notice of the claims and the grounds upon which they are based and to demonstrate a right to relief.  *Bell Atlantic v. Twombly*, 550 U.S. 544, 555-56 (2007).  Conclusory allegations are insufficient.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570.

**Discussion**

Plaintiff alleges a "violation of his Equal Protection rights to be free from arbitrary and abuse of discretion where Defendants have retaliated against him for exercising his First Amendment rights, and for cruel and unusual punishment in subjecting him to a restriction and status for over 20 plus years."  Compl. at ¶ 1.  He also alleges a "violation of his Due Process Rights by subjecting him to an atypical and significant hardship in which [he] has a liberty interest in being released from these restraints and conditions."  *Id*.  Lastly, he alleges that he was denied periodic reviews as required under DOC Directives, procedures, and policies.  *Id*.

The Court construes Plaintiff's allegations liberally, as including the following claims: (1) retaliation in violation of the First Amendment; (2) deliberate indifference in violation of the Eighth Amendment, based upon his conditions of confinement; (3) a Fourteenth Amendment procedural due process violation; (4) a Fourteenth Amendment equal protection violation; and (5) a violation of DOC Administrative Directives.  The Court will address each of these claims in turn.

<u>Fourteenth Amendment Procedural Due Process</u>

"[T]he Due Process Clause provides that certain substantive rights—life, liberty, and property—cannot be deprived except pursuant to constitutionally adequate procedures." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541 (1985).  A procedural due process analysis

"proceeds in two steps: [a court] first ask[s] whether there exists a liberty or property interest of which a person has been deprived, and if so . . . whether the procedures followed by the State were constitutionally sufficient." *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011) (*per curiam*).  Thus, here, Plaintiff "must allege facts showing that he had a protected liberty interest in remaining free from the [High Security] classification and that the defendants deprived him of that interest without affording him due process." *Robinson v. Quiros*, No. 22-CV-1471 (MPS), 2023 WL 7300563, at *6 (D. Conn. Nov. 6, 2023) (citing *Walker v. Fischer*, 523 F. App'x 43, 44 (2d Cir. 2013)).

Generally, prisoner classifications do not implicate a liberty interest so as to trigger due process protections.  *See Torres v. Howell*, No. 03-CV-2227 (MRK), 2006 WL 1525942, at **15–16 (D. Conn. May 30, 2006) (collecting cases).  A prisoner, however, may have a liberty interest in being free from a "restraint which . . . imposes atypical and significant hardship . . . in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995); *see also Wilkinson v. Austin*, 545 U.S. 209, 223 (2005).  The Court should consider "[b]oth the conditions of confinement and their duration . . . harsh conditions endured for a brief interval and somewhat harsh conditions endured for a prolonged interval might both be atypical." *Palmer v. Richards*, 364 F.3d 60, 64 (2d Cir. 2004) (citation omitted).  Moreover, "[w]hether the conditions of . . . confinement constitute an atypical and significant hardship requires that they be considered in comparison to the hardships endured by prisoners in general population, as well as prisoners in administrative and protective confinement, assuming such confinements are imposed in the ordinary course of prison administration." *Welch* v. *Bartlett*, 196 F.3d 389, 393 (2d Cir. 1999).

The Court finds that Plaintiff has plausibly alleged that his twenty-year placement on High Security status constitutes an atypical and significant hardship. *See, e.g.*, *Wilkinson*, 545 U.S. at 223–24 (holding that prisoners had a "liberty interest in avoiding assignment" to a particular

maximum-security facility because that assignment would "impose an atypical and significant hardship"). As detailed above, High Security status allegedly results in significantly harsher prison conditions, to include, by example only, daily shakedowns, constant harassment, and physical restraints. High Security status precludes Plaintiff from having outside work assignments or contact visits, and he is ineligible for parole consideration. *See* Compl. at ¶¶ 27–31. Plaintiff also alleges that his placement on High Security status has greatly affected his mental health, and the requirement that he move every sixty-days has taken a toll on his "medically impaired body." *Id.* at ¶¶ 23–26. Thus, Plaintiff has plausibly alleged a liberty interest in remaining free from his High Security classification. *See Webb v. Semple*, No. 17-CV-1623 (SRU), 2018 WL 5299706, at *6 (D. Conn. Oct. 25, 2018) (allowing procedural due process claim to proceed where plaintiff alleged he had not been provided proper classification reviews to justify his continued solitary confinement for over twenty years).

Turning to whether Plaintiff has been afforded due process, "[i]t is well established that whenever process is constitutionally due, no matter the context, '[i]t . . . must be granted at a meaningful time and in a meaningful manner.'" *Proctor v. LeClaire*, 846 F.3d 597, 609, 612 (2d Cir. 2017) (finding triable factual issues as to whether inmate's administrative segregation reviews were constitutionally meaningful where inmate was in administrative segregation for over thirteen years) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)).

Periodic classification reviews should satisfy three factors: "First, the reviewing prison officials must actually evaluate whether the inmate's continued [segregated] confinement is justified." *Id.* (citing *Hewitt v. Helms*, 459 U.S. 460, 477 n.9 (1983)). "Second, the reviewing officials must evaluate whether the justification for [High Security placement] exists at the time of the review or will exist in the future, and consider new relevant evidence as it becomes available."

*Id.* at 611.  Finally, "the reviewing officials must maintain institutional safety and security (or another valid administrative justification) as their guiding principles throughout an inmate's [segregated housing] term." *Id.*

### *Defendants Maiga, Snyder, Mulligan, and Dougherty*

Plaintiff has plausibly pleaded claims for Fourteenth Amendment procedural due process violations against Defendants Maiga, Snyder, Mulligan, and Dougherty.

### Maiga

Plaintiff claims that while he was at Cheshire, Defendant Maiga rejected the November 2019 and September 2021 review recommendations that Plaintiff be removed from High Security.[7] Compl. at ¶¶ 116-18, 120-23.  The recommendations for removal advised Defendant Maiga that Plaintiff no longer posed a threat to security, had good institutional adjustment, and was not an escape risk.  *Id.* at ¶¶ 116-17, 120-21.  Plaintiff alleges that Defendant Maiga rejected the recommendations with no meaningful consideration or penological justification.  *Id.* at ¶¶ 118, 122-23.  Lastly, Plaintiff claims Defendant Maiga failed to conduct his periodic review for November of 2020 while he was housed at Garner, even though Defendant Maiga knew it was time for Plaintiff's review.  *Id.* at ¶¶ 93, 95.

### Snyder and Dougherty

As of April 2022, Snyder had replaced Defendant Maiga as the director of OCPM.  *Id.* at ¶ 125.  While Plaintiff was at Cheshire, he also had High Security reviews in April 2022, October 2022, April 2023, and October 2023.  *Id.* at ¶¶ 125, 128-33.  In each, Plaintiff alleges that it was recommended that he be removed from High Security because he posed no security threat, did not fit any of the factors for continued placement, and was not an escape risk.  *See id.*  Plaintiff claims

---

[7] Although this claim may implicate the statute of limitations, the Court does not address the affirmative defense of statute of limitations on initial review.

that Defendant Snyder rejected the ensuing recommendations with no meaningful consideration or penological justification and for no reasons pertaining to his initial placement. *See id.*

Plaintiff also claims that while housed at Corrigan in July 2024, Defendants Snyder and Dougherty failed to conduct his periodic review for eleven months. *Id.* at ¶ 104. Plaintiff eventually had a periodic review in September of 2024, and when he appealed to Defendant Dougherty about the eleven-month lapse between periodic reviews, the grievance was upheld in part. *Id.* at ¶ 105. Plaintiff also maintains that Snyder and Dougherty denied his removal from High Security status with no penological justification, especially since Plaintiff was, at the time, in a minimum level security unit at Corrigan. *Id.* at ¶¶ 106-07.

<u>Mulligan</u>

While Plaintiff was at Cheshire in December 2022, he filed an appeal with Defendant Mulligan pertaining to his October 2022 review and Defendant Snyder's ensuing rejection of the recommendation that he be removed from High Security. *Id.* at ¶ 138. Plaintiff claims that Defendant Mulligan had the authority to address his continued rejections of his recommended removal from High Security status, but denied his appeal without providing any specific reason. *See id.* On February 27, 2025, while housed at MacDougall, Plaintiff appealed another rejection of a recommendation that he be removed from High Security status, but Defendant Mulligan responded that Plaintiff's appeal was not subject to review. *Id.* at ¶¶ 144-45.

These allegations plausibly allege that Maiga, Snyder, Dougherty and Mulligan did not meaningfully evaluate whether Plaintiff's continued High Security status was justified as required. As such, at this juncture, the Fourteenth Amendment procedural due process claims against Defendants Maiga, Snyder, Mulligan, and Dougherty can proceed for further development of the record.

Eighth Amendment Conditions of Confinement

Plaintiff claims that Defendants' actions or inactions have constituted "cruel and unusual punishment in subjecting him to a restriction and status for over 20 plus years." Compl. ECF No. ¶ 1. Construed liberally, Plaintiff brings an Eighth Amendment deliberate indifference claim pertaining to his conditions of confinement.[8]

An unconstitutional conditions of confinement claim requires a plaintiff to show that the conditions under which he was confined constitute a "denial of the minimal civilized measures of life's necessities." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (internal quotation marks omitted). To prevail on an Eighth Amendment conditions of confinement claim, a plaintiff must first satisfy an objective element that the conditions of confinement, "either alone or in combination, pose an unreasonable risk of serious damage to his health . . ." *Darnell v. Pineiro*, 849 F.3d 17, 30 (2d Cir. 2017). The second element is subjective, and an inmate must allege that the defendant prison officials possessed culpable intent, that is, the officials knew that the inmate faced a substantial risk to his health or safety and disregarded that risk by failing to take corrective action. *See Farmer*, 511 U.S. at 834, 837. Thus, an allegation of "mere negligen[t]" conduct is insufficient. *Id.* at 835.

*Defendants Maiga, Snyder, Mulligan, and Dougherty*

Here, the same allegations that support a finding that High Security status results in an atypical and significant hardship, thus creating a liberty interest, support a finding that Plaintiff

---

[8] "Where a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims." *Baltas v. Erfe*, No. 19-CV-1820 (MPS), 2021 WL 3887591, at *6 (D. Conn. Aug. 31, 2021) (quoting *Albright v. Oliver*, 510 U.S. 266, 272–73 (1994)). Because Plaintiff "is a convicted prisoner, any protection that substantive due process affords him is 'at best redundant of that provided by the Eighth Amendment.'" *Bruno v. Annucci*, No. 22-CV-686 (LJV), 2023 WL 2601947, at *8 (W.D.N.Y. Mar. 22, 2023) (quoting *Graham v. Connor*, 490 U.S. 386, 395 n.10 (1989)); *see also Kaminski v. Oniyuke*, No. 19-CV-58 (SRU), 2019 WL 1877075, at *4 (D. Conn. Apr. 26, 2019).

13

has plausibly alleged the objective element of a conditions of confinement claim, to wit, that placement in High Security status, and the conditions that ensued as a result, posed an unreasonable risk of serious damage to his health and safety.

As for the subjective element, similarly, the allegations discussed above plausibly allege that Defendants Maiga, Snyder, Mulligan, and Dougherty were aware that Plaintiff was confined under conditions that posed a risk to his health and safety and disregarded that risk by failing to take corrective action, even when such corrective action was repeatedly recommended. Based on Plaintiff's description of the environment for inmates placed on High Security status, in conjunction with these Defendants' involvement or awareness of Plaintiff's alleged arbitrary placement on that status, a reasonable inference can be drawn that these Defendants were deliberately indifferent to Plaintiff's conditions of confinement. *See Ashby v. Quiros*, No. 19-CV-1370 (SRU), 2020 WL 532090, at *5 (D. Conn. Feb. 3, 2020) (finding that plaintiff set forth a plausible Eighth Amendment violation based on his confinement as a "special circumstances high security" status inmate). Thus, Plaintiff's Eight Amendment conditions of confinement claim may proceed against Defendants Maiga, Snyder, Mulligan, and Dougherty.

<u>Defendants Hannah, Rodriguez, Quiros, Lewis, Garcia, and Guadarrama</u>

Plaintiff, however, has not plausibly pleaded Fourteenth Amendment procedural due process or Eighth Amendment claims against Defendants Hannah, Rodriguez, Quiros, Lewis, Garcia, and Guadarrama. The allegations against these Defendants are sparse and/or wholly conclusory.

It is well-settled that a plaintiff seeking monetary damages from a defendant under Section 1983 must allege facts that establish the personal involvement of that defendant in the alleged constitutional violation. *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994). This is true with respect

14

to supervisory officials as well. *See Tangreti v. Bachman*, 983 F.3d 609, 620 (2d Cir. 2020) ("[A] plaintiff must plead and prove the elements of the underlying constitutional violation directly against the official without relying on a special test for supervisory liability" in order to hold a state official liable for damages under Section 1983).

During the time of the alleged violations, Defendant Hannah was the Warden at Garner and Defendant Rodriguez was the District Administrator. *See* Compl. at ¶¶ 95, 98. In February 2021, Plaintiff filed a grievance with Defendant Hannah to advise that his High Security review had not been conducted in November 2020. *Id*. at ¶¶ 93, 97. He claims that on March 1, 2021, the day Warden Hannah denied his grievance, she also made her subordinates give Plaintiff a High Security review. *Id*. ¶¶ at 93-95. Plaintiff appealed Defendant Hannah's denial of his grievance to Defendant Rodriguez on March 5, 2021, after he had already had his High Security review. *See id*. at ¶¶ 98-99. Defendant Rodriguez rejected the appeal because the grievance was not filed within the required thirty days. *Id*. at ¶ 98.

These allegations are not sufficient to show personal involvement in a procedural due process violation. "After the fact notice of a violation of an inmate's rights is insufficient to establish a supervisor's liability for the violation. Receiving post hoc notice does not constitute personal involvement in the unconstitutional activity and cannot be said to have proximately caused the damage suffered by the inmate." *Andrews v. Gates*, No. 17-CV-1233 (SRU), 2019 WL 2930063, at *8 (D. Conn. July 8, 2019) (quoting *Rahman v. Fisher*, 607 F. Supp. 2d 580, 585 (S.D.N.Y. 2009). Plaintiff had a review shortly after he informed Defendant Hannah of his missed November 2020 review, and Plaintiff appealed his grievance with Defendant Rodriguez after he had his review in March of 2021. Knowledge after the fact does not create *ex post facto* liability.

Plaintiff has also failed to sufficiently allege the personal involvement of Defendants Quiros, Lewis, Garcia, and Guadarrama in a procedural due process violation. As an initial matter, Plaintiff has failed to allege that Defendant Lewis was personally involved in any constitutional violation. As for Defendant Quiros, Plaintiff alleges that he was one of the "final decision makers" who kept cycling him around by denying or rejecting his appeals. This allegation is too vague and conclusory to plead a plausible due process claim, because there are no allegations to suggest that Defendant Quiros had any meaningful role in rejecting the recommendations for Plaintiff to be removed from High Security or in maintaining him in that status.

As to Defendant Garcia, who was the District Administrator when Plaintiff was housed at Cheshire in 2023, Plaintiff's sole allegation is that Defendant Garcia denied an appeal of a rejection of a recommendation that Plaintiff be removed from High Security due to his disciplinary history. This allegation is too sparse and too conclusory to plausibly allege that Defendant Garcia had a personal role in denying Plaintiff his due process. Lastly, while housed at Corrigan, Plaintiff had a High Security review in September of 2024. Plaintiff filed an appeal in December 2024 with Defendant Guadarrama, the Acting District Administrator at the time, regarding a delay between prior High Security reviews and a recent rejection of a recommendation that he be removed from High Security status. Plaintiff claims that Defendant Guadarrama denied the appeal because the grievance was not the proper avenue to appeal his classification decision. Although Plaintiff claims that Defendant Guadarrama failed to give any meaningful consideration, Plaintiff filed this grievance after his delayed High Security review was already completed, and Defendant Guadarrama denied the appeal not because he failed to give the appeal consideration, but because it was improperly filed by Plaintiff. These allegations do not plausibly allege a due process violation by Defendant Guadarrama.

For the same reasons, nor has Plaintiff plausibly alleged an Eighth Amendment violation against Defendants Hannah, Brown, Quiros, Lewis, Garcia, or Guadarrama. The allegations simply do not plausibly allege that these Defendants were aware of a substantial risk of harm to Plaintiff's health and disregarded that risk. Accordingly, Plaintiff's Fourteenth Amendment procedural due process and Eighth Amendment conditions of confinement claims are dismissed against Defendants Hannah, Brown, Quiros, Lewis, Garcia, and Guadarrama.

<u>Fourteenth Amendment Equal Protection</u>

Plaintiff next brings an equal protection claim under the Fourteenth Amendment. The Equal Protection clause provides "that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985). The highest level of constitutional scrutiny is applied to "those laws that burden a fundamental right or target a suspect class, such as those based on race, national origin, sex or religion." *Pedersen v. Off. of Pers. Mgmt.*, 881 F. Supp. 2d 294, 309 (D. Conn. 2012) (citation omitted). "[P]risoners in general are not a suspect class." *Brown v. Reis*, No. 24-CV-950 (KAD), 2024 WL 4723333, at *7 (D. Conn. Nov. 8, 2024) (citations omitted). If the conduct does not implicate a fundamental right or target a suspect class, the challenged conduct will survive constitutional scrutiny "so long as the [conduct] bears a rational relation to some legitimate end." *Romer v. Evans*, 517 U.S. 620, 631 (1996). Absent a challenge to some sort of policy or enactment on behalf of a suspect class, a plaintiff may still pursue an equal protection claim on a class of one theory. *Musco Propane, LLP v. Town of Wolcott*, 891 F. Supp. 2d 261, 271 (D. Conn. 2012). "A class-of-one claim exists 'where the [petitioner] alleges that [she] has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.'" *Analytical Diagnostic Labs, Inc. v. Kusel*, 626 F.3d 135, 140 (2d Cir. 2010) (alteration added) (citation

omitted).

Though the Complaint contains a description of other inmates and their disciplinary history, Plaintiff fails to plead any facts to show how his equal protection rights were allegedly violated.  He does not indicate whether he is asserting a claim as a member of a suspect class, or whether he is attempting to bring a "class of one" claim.  Moreover, the allegations do not plausibly allege the personal involvement of any Defendant in what might be arguably construed as a plausibly alleged equal protection violation.  Accordingly, Plaintiff's equal protection claim is dismissed for failure to plead a plausible claim.

<u>First Amendment Retaliation</u>

To the extent Plaintiff brings a First Amendment retaliation claim, he has not pleaded a plausible claim.  To state a retaliation claim, Plaintiff must allege facts demonstrating "(1) that the [Plaintiff's] speech or conduct at issue was protected; (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech [or conduct] and the adverse action." *Burns v. Martuscello*, 890 F.3d 77, 84 (2d Cir. 2018) (internal quotation marks and citations omitted).  "An adverse action is defined as 'retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights.'" *Brandon v. Kinter*, 938 F.3d 21, 40 (2d Cir. 2019) (quoting *Davis v. Goord*, 320 F.3d 346, 353 (2d Cir. 2003)).  To allege causation, a plaintiff must state facts "suggesting that the protected conduct was a substantial or motivating factor in the prison official's decision to take action against [him]." *Moore v. Peters*, 92 F. Supp. 3d 109, 121 (W.D.N.Y. 2015) (quoting *Burton v. Lynch*, 664 F. Supp. 2d 349, 367 (S.D.N.Y. 2009)).

Plaintiff fails to identify any protected speech or conduct in which he engaged as forming the basis of the claim.  It is therefore axiomatic that he has failed to plausibly allege that his

continued placement on High Security status was derived from a retaliatory motive. To the extent Plaintiff identifies any conduct as retaliatory in violation of the First Amendment, he does so only in conclusory fashion. Therefore, Plaintiff's First Amendment retaliation claim is dismissed.

### Violation of DOC Directives

Next, Plaintiff brings a claim against Defendants for violating DOC Administrative Directives. It is well-established that "state prison directives do not confer any constitutionally protected rights on inmates . . . and Fourteenth Amendment due process protections are not implicated by the defendants' alleged failure to comply with administrative directives." *Riddick v. Chevalier*, No. 11-CV-1555 (SRU), 2013 WL 4823153, at *4 (D. Conn. Sept. 9, 2013); *see Sandin,* 515 U.S. at 481–82 (noting prison directives, which are designed primarily to guide correctional staff, do not confer rights on inmates). Thus, any claim for violation of an Administrative Directive, whether for damages or injunctive relief, is dismissed.

### Official Capacity Claims

Plaintiff seeks a preliminary and permanent injunction requiring Defendants Quiros, Mulligan, Snyder, Rodriguez, and Garcia to release him from restrictive status.[9] Compl. at ¶¶ 159-166.

Plaintiff may proceed for injunctive or declaratory relief against a defendant in his or her official capacity only to the extent he alleges an ongoing constitutional violation. *See Va. Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 254–55 (2011) (citing *Ex parte Young*, 209 U.S. 123 (1908)). Further, a claim for injunctive relief can only proceed against defendants who "plausibly have the authority to grant the prospective relief." *See Smith v. Perez*, No. 19-CV-1758

---

[9] Plaintiff states that he is suing Defendant Rodriguez in his individual capacity only. However, because Plaintiff seeks injunctive relief against Defendant Rodriguez, the Court construes his claims against Defendant Rodriguez as both individual and official capacity claims.

(VAB), 2020 WL 2307643, at *6 (D. Conn. May 8, 2020).  A "plaintiff's claim for injunctive relief does not require personal involvement, as required for a damages claim." *Branch v. Guadarrama*, No. 24-CV-536 (MPS), 2024 WL 3342991, at *5 (D. Conn. July 9, 2024); *see also Smith v. Muccino*, 223 F. Supp. 2d 396, 403 (D. Conn. 2002) ("[P]ersonal involvement is not a prerequisite to injunctive relief, and such relief may be had against officers in their official capacity.").  Lastly, federal courts can order prospective relief "in any civil action with respect to prison conditions," provided it "extend[s] no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs."  18 U.S.C. § 3626(a).

Because Plaintiff claims an ongoing violation of his Fourteenth Amendment procedural due process and Eighth Amendment rights, and such claims are otherwise sufficiently pleaded, the Court concludes that Plaintiff may seek injunctive relief against Defendant Deputy Commissioner Mulligan and Defendant Snyder, as Head of OCPM.  Plaintiff has plausibly alleged that these Defendants have the authority to grant the prospective relief he seeks.

The Court dismisses Plaintiff's official capacity claims against District Administrator Defendant Rodriguez, because Plaintiff's individual capacity claims against him have been dismissed and Plaintiff's official capacity claims are proceeding against Defendants Mulligan and Snyder.  Lastly, because Plaintiff has not pleaded any plausible individual capacity claims against Defendant Garcia and has not alleged that Defendant Garcia can provide the relief he seeks, any official capacity claims against Defendant Garcia are also dismissed.

**Conclusion**

For all the foregoing reasons, Plaintiff's claim for violation of DOC Administrative Directives is **DISMISSED with prejudice**.  Plaintiff's First Amendment retaliation and Fourteenth Amendment equal protection claims are **DISMISSED without prejudice**.  All

individual and official capacity claims against Defendants Hannah, Brown, Quiros, Lewis, Garcia, and Guadarrama are **DISMISSED**.

The case shall **PROCEED** on Plaintiff's Fourteenth Amendment and Eighth Amendment individual capacity claims against Defendants Maiga, Snyder, Mulligan, and Dougherty, as well as Plaintiff's official capacity claims against Defendants Mulligan and Snyder for injunctive relief.

The Court enters the following orders:

(1) The **Clerk of Court** is directed to **TERMINATE** Defendants Hannah, Brown, Quiros, Lewis, Garcia, and Guadarrama.

(2) **The Clerk of Court shall** verify the current work address for Defendants Maiga, Snyder, Mulligan, and Dougherty with the Department of Correction Office of Legal Affairs, mail a waiver of service of process request packet to Defendants Maiga, Snyder, Mulligan, and Dougherty at the address(es) provided on or before **February 19, 2026**, and report to the Court on the status of the waiver request on the **thirty-fifth** day after mailing. If Defendants Maiga, Snyder, Mulligan, and/or Dougherty fail to return the waiver request, the Clerk shall make arrangements for in person service by the U.S. Marshals Service on Defendants Maiga, Snyder, Mulligan, and/or Dougherty in their individual capacities, and Defendants Maiga, Snyder, Mulligan, and/or Dougherty shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

(3) **The Clerk of Court** is instructed to prepare a summons form and send an official capacity service packet to the U.S. Marshal Service. The U.S. Marshal Service is directed to effect service of the Complaint, attached exhibits, and this Initial Review Order on Defendants Mulligan and Snyder in their official capacity at the Office of the Attorney General, 165 Capitol Avenue, Hartford, CT 06106, on or before **February 19, 2026**, and to file a return of service within **thirty**

**(30) days** from the date of this Initial Review Order.

(4) **The Clerk of Court shall** send Plaintiff a copy of this Initial Review Order.

(5) **The Clerk of Court shall** send a courtesy copy of the Complaint, attached exhibits, and this Initial Review Order to the Connecticut Attorney General and the Department of Correction Office of Legal Affairs.

(6) Defendants shall file a response to the Complaint, either an answer or motion to dismiss, within **sixty (60) days** from the date the notice of lawsuit and waiver of service of summons forms are mailed to them.  If Defendants choose to file an answer, Defendants shall admit or deny the allegations and respond to the cognizable claims recited above.  Defendants may also include any and all additional defenses permitted by the Federal Rules.

(7) Discovery, according to Federal Rules of Civil Procedure 26–37, shall be completed by **July 29, 2026**.  Discovery requests need not be filed with the Court.

(8) The parties must comply with the District of Connecticut "Standing Order Re: Initial Discovery Disclosures," which will be sent to both parties by the Court.  The Order can also be found at http://ctd.uscourts.gov/administrative-standing-orders.

(9) All motions for summary judgment shall be filed by **August 28, 2026**.

(10) According to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within **twenty-one (21) days** of the date the motion was filed.  If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(11) If Plaintiff changes his address at any time during the litigation of this case, Local Court Rule 83.1 provides that he MUST notify the Court.  **Failure to do so may result in the dismissal of the case.**  Plaintiff must give notice of a new address even if he is incarcerated.  He should write "PLEASE NOTE MY NEW ADDRESS" on the notice. It is not enough to just put

the new address on a letter without indicating that it is a new address.  If Plaintiff has more than one pending case, he should indicate all of the case numbers in the notification of change of address.  He should also notify Defendants or defense counsel of his new address.

(12) Plaintiff shall utilize the Prisoner Efiling Program when filing documents with the court.  Plaintiff is advised that the Program may be used only to file documents with the court.  Local court rules provide that discovery requests are not filed with the court.  D. Conn. L. Civ. R. 5(f).  Therefore, discovery requests must be served on Defendants' counsel by regular mail.

**SO ORDERED** at Bridgeport, Connecticut, this 29th day of January 2026.

 */s/ Kari A. Dooley*
KARI A. DOOLEY
UNITED STATES DISTRICT JUDGE